## OLYMPIC KNITWEAR, Inc., v. FLEETWOOD SPORTWEAR, Inc., et al.

District Court, S. D. New York.

March 25, 1941.

Leonard M. Henkin, of New York City (Louis Schumacher, of New York City, of counsel), for plaintiff.

Levien, Singer & Neuburger, of New York City (John P. Chandler, of New York City, of counsel), for defendants.

CONGER, District Judge.

This is an action charging defendants with infringement of Design Letters Patent No. 118,957 and No. 118,958, both granted on February 13, 1940 to one Leon Goldsmith and by him subsequently assigned to the plaintiff.

The claim in both patents is for a new and original ornamental design for a sweater. Both plaintiff and the corporate defendant are in the business of manufacturing and selling sweaters.

The alleged infringing sweater was put out and sold to the trade by the corporate defendant. Defendant Max W. Elkind was and is the President, General Manager and majority stockholder of the corporate defendant.

The issues are whether the plaintiff's design patents are valid, and if valid, whether there has been an infringement.

Plaintiff placed its sweater on the market during the first part of the year 1940, and defendant's garment went out for sale some time thereafter.

In deciding this controversy both of plaintiff's patents should be considered together. There is little difference between the two. The only difference that I can find is that in the second sweater contemplated by patent No. 118,958 there is no ribbed effect. The plaintiff's witness (Goldsmith) testified that this patent was taken out only at the advice of an attorney to fully protect the rights and claims in connection with the first patent.

I am satisfied that the garment made by the corporate defendant infringes plaintiff's patent. While it was not conceded at the trial, the defendant offered no proof on this point, except to put in evidence one of its sweaters. This was displayed on a model in the courtroom, as was the commercial product put out by the plaintiff. Comparing these two and also examining plaintiff's two patents it seems to me that there was almost complete identity. They are substantially the same. The difference, if any, is hardly discernable.

I hold, therefore, that plaintiff's patents have been infringed by defendant's sweater.

I will now take up the question of the validity of plaintiff's patents.

Goldsmith was the Vice-President and Treasurer of the plaintiff. He was also a designer of considerable skill and experience. He was familiar with style and style trends. He read the style magazines and trade journals.

Just prior to plaintiff's sweater being put on the market, the motion picture "Gone With The Wind", after long delay, was about to be shown publically for the first time. Some one connected with the picture interested the plaintiff in the use of the name "Scarlett O'Hara". Plaintiff apparently seeing the possibilities made arrangements to use this name for one of its sweaters. Goldsmith then proceeded to create a sweater which would be suitable to the era of the Civil War days, with low neck, narrow waist, accentuated busts and wide hips to fit, as he testified, "the figure of the girl of today who had not the figure of the girl of the Civil War era." He made no special research, but he did have before him several stills (photographs from the motion picture).

Goldsmith solved the problem by providing for a wide flare at the bottom of the sweater and above that a ribbed effect extending above the waist line. This had the tendency, and did create a rather long narrow waist, and the flare at the bottom gave the effect of wide hips. Above the ribbed portion the sweater rather widens out, the whole effect giving the busts an accentuation. The neck was rather low with a rather deep ribbed collar with flare on it. To balance the whole effect he put ribbing and a flare on the sleeves. His finished product, as he testified, was reminiscent of the Civil War days.

There was nothing new in the elements used in the formation of this garment. What Mr. Goldsmith did was assemble and put together a number of elements old in the art, and he constructed an article rather pleasing to the eye.

The defendant submitted many examples of the prior art. I do not propose to go into detail as to them, suffice to say that each of the designs submitted by the defendant had one or more of the salient features of the patent in suit.

█ True the plaintiff's sweater, modeled after the design of his patents, was rather pleasing and appealed to the buying public and true it enjoyed considerable commercial success. But this is not sufficient to constitute invention. At the most it is the product of the skill and experience of a good designer. The following extract of the case of Neufeld-Furst & Co., Inc., v. Jay-Day Frocks, Inc., 2 Cir., 112 F. 2d 715, 716, might very well be applied herein, although in that case we have a dress, and in this case we have a sweater: "In the case at bar the prior art showed numerous designs for dresses each of which had one or more of the salient features of the patent in suit. To combine them into the design of the patent produced a dress of new and pleasing appearance which caught the fancy of the purchasing public in the summer of 1938, but we cannot say that it required more than the skill of a good dressmaker who had, or is chargeable with, knowledge of the prior art."

█ I therefore hold plaintiff's patents to be invalid for lack of invention. I direct a decree to be entered dismissing plaintiff's complaint with costs.

The defendants' attorneys should submit to me, through the clerk's office, on notice, simple findings of fact and conclusions of law for my signature. The plaintiff's attorney should have five days' notice of settlement. I suggest that plaintiff's attorney, if he be so disposed, submit, on two days' notice, criticisms of the proposed findings, as counterfindings will avail him nothing. The findings should be triple-spaced, typewritten, so that I may readily make any necessary changes on the copy submitted.